UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                                       :
In re:                                                 :        Chapter 15
                                                       :
NITON FUND SPC,                                        :        Case No. 15-_____ (___)
                                                       :
                          Debtor in a                  :
                          Foreign Proceeding.          :
                                                       :
-------------------------------------------------------x

**DECLARATION OF STEPHEN LEONTSINIS**
**IN SUPPORT OF CHAPTER 15 PETITION OF NITON FUND SPC**
**FOR RECOGNITION AS A FOREIGN MAIN PROCEEDING**

I, STEPHEN LEONTSINIS, hereby declare, under penalty of perjury under the laws of

the United States of America, that the following is true and correct to the best of my knowledge

and belief:

### Introduction

1.      I am a partner of the law firm of Collas Crill & CARD, a law firm with

offices in the Cayman Islands, the Channel Islands of Guernsey and Jersey, England

and Singapore.  We advise financial, institutional and business clients worldwide.  I practise

law in the Cayman Islands and I advise on the laws of the Cayman Islands.

2.      My practice in the Cayman Islands primarily focuses on contentious

commercial litigation with an emphasis on insolvency and restructuring matters.  I

am the head of Collas Crill & CARD's Cayman Islands dispute resolution department, which is

responsible for all of the office's insolvency and restructuring matters, and I spent more than two

years with a boutique litigation firm in Miami, Florida that specializes in cross-border

insolvency, asset-tracing, judgment enforcement and trust and private client disputes.

3.     In December 2002, I was awarded a Bachelor of Laws by the University of Stellenbosch in the Republic of South Africa. I was called to the Johannesburg Bar of Advocates during March of 2003, and subsequently practiced as an advocate of the High Court of South Africa for a period of 5 years. I have been admitted as an attorney-at-law in the Cayman Islands since January 2009. In September 2009, I requalified and was admitted to practice as a solicitor and, subsequently, as a solicitor-advocate of the High Court of England & Wales. I was called as a solicitor-advocate to the bar of the Supreme Court of the Eastern Caribbean in May 2013.

4.     I have appeared before the Privy Council, the Courts of Appeal of the Caribbean, England and Wales and the Republic of South Africa and regularly appear before the Grand Court of the Cayman Islands, High Court of the Republic of South Africa and the Supreme Court of the British Virgin Islands. By far the majority of my appearances concern aspects of the respective insolvency regimes of the various jurisdictions to which I am admitted.

5.     Although I am not a U.S. attorney, I am familiar with the provisions of Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), both as a consequence of my Cayman Islands practice and my time practicing in the United States as a foreign practicing lawyer.

6.     I respectfully submit this declaration (the "**Declaration**") in support of the Petition of Matthew James Wright ("**Wright**") and Christopher Barnett Kennedy ("**Kennedy**") (collectively, the "**Petitioners**" or "**Liquidators**") in their capacity as  the Joint Official Liquidators of Niton Fund SPC ("**Niton**") for and on behalf of the Short Term Shipping Fund Segregated Portfolio (the "**Short Term Fund**"), a company undergoing voluntary liquidation under the supervision of the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**"), case no. FSD 0117/2015 (NRLC) (the "**Cayman Liquidation**")

pursuant to section 124 of the Cayman Islands Companies Law (2013 Revision) (the "**Cayman Companies Law**"). This petition seeks recognition of the Cayman Liquidation pursuant to 11 U.S.C. § 1517(b)(1) as a foreign main proceeding, thereby offering relief pursuant to the Bankruptcy Code (the "**Chapter 15 Petition**").

7.     Except as otherwise indicated, all of the facts set forth in this Declaration are based upon my own personal knowledge or based upon my review of relevant documents, including, without limitation, the Chapter 15 Petition, the sworn declarations of Wright (the "**Wright Declaration**") and Warren Gluck (the "**Gluck Declaration**"), or upon my opinion based upon my experience and knowledge of Cayman Islands law. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of the Cayman Islands as a practicing Cayman Islands attorney.

8.     For the reasons discussed below, it is my position that: (i) Wright and Kennedy, qualify as "foreign representatives" in connection with the Cayman Liquidation, and the Cayman Liquidation constitutes a "foreign proceeding" according to 11 U.S.C. §§ 101(24) and (23), respectively; and (ii) the Cayman Liquidation is a "foreign main proceeding" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

### Background

9.     Niton is a Cayman Islands Monetary Authority ("**CIMA**") registered, open-ended, exempted, segregated portfolio company that was incorporated in the Cayman Islands on November 21, 2008 (registration number CD-220073). I understand that on June 16, 2015, a Statutory Demand was served on the registered office of Niton by attorneys for a Niton shareholder. The shareholder previously had sought, but had not received any proceeds in respect of a request for redemption of its shares in the Short Term Fund.

10.    After receipt of the Statutory Demand, the Niton directors convened a meeting on June 22, 2015, at which they voted to recommend to Niton Capital Investments Ltd. ("**Niton Investments**"), Niton's sole voting shareholder, that Niton's affairs should be wound up and that it should be placed into voluntary liquidation as expeditiously as possible.

11.    Thereafter, on June 24, 2015, Niton Investments resolved to place Niton into voluntary liquidation and appointed Messrs. Wright and Kennedy of RHSW (Cayman) Limited ("**RHSW**"), an affiliate of Rawlinson & Hunter, a respected accounting, international accounting and trust firm, as its joint voluntary liquidators.

12.    On July 15, 2015, Messrs. Wright and Kennedy filed a petition under section 124 of the Cayman Companies Law with the Cayman Court (the "**Cayman Liquidation Petition**") seeking entry of an order that (i) the Niton liquidation continue under the supervision of the Cayman Court, (ii) appointing Messrs. Wright and Kennedy as Joint Official Liquidators of Niton, and (iii) granting the Liquidators certain powers as described in the petition and as will be discussed in more detail below.    The Cayman Court filed its Order granting the Cayman Liquidation Petition on July 31, 2015 (the "**Cayman Liquidation Order**").    A true and correct copy of the Cayman Liquidation Order is attached to the Declaration of Mr. Wright as **Exhibit A**.

13.    I also am aware that on October 20, 2015, the Cayman Court entered an Order authorizing the Liquidators to retain Holland & Knight LLP as their U.S. counsel.    A review of the application to retain Holland & Knight makes it clear that the Liquidators sought authority to retain that firm for the purpose of filing a Chapter 15 Petition and request for additional relief under the Bankruptcy Code.    A copy of the Liquidators' October 20, 2015 Motion and the resultant Order are attached to Mr. Wright's Declaration as **Exhibit B**.

4

14.    As "official liquidators" appointed by the Cayman Court, the Liquidators may exercise such powers as are conferred by the Cayman Companies Law and the Cayman Liquidation Order appointing them (*see* section 110 of the C a y m a n  Companies Law) and they are authorised to file this Chapter 15 Petition and to take such steps in connection therewith as the Liquidators consider to be appropriate, from time to time. True and correct copies of the relevant sections of the Cayman Companies Law (the significance of which I will discuss in more detail below), are attached hereto as **Exhibit [1]**.

15.    I have been asked by the Liquidators to explain in general terms the relevant substantive Cayman Islands law and procedural rules relating to the liquidation and dissolution of insolvent Cayman Islands companies, and in particular how they relate to Niton, for the purpose of filing a Chapter 15 Petition for recognition of the Cayman Proceedings as a foreign main proceeding. The issues on which I have been asked to opine fall well within my professional experience.

### Cayman Islands Judicial System

16.    The Cayman Court and the Court of Appeal of the Cayman Islands (the "**Cayman Court of Appeal**") are constituted by and exercise jurisdiction and powers conferred under the Cayman Constitution as superior courts of record, with such further jurisdiction and powers established pursuant to the Grand Court Law and the Court of Appeal Law (2011 Revision), respectively.

17.    Subject to certain laws, the Cayman Court possesses and exercises a jurisdiction within the Cayman Islands similar to that which is vested in, or is capable of being exercised in England, by the English High Court and the Divisional Courts of that Court. Subject to certain restrictions, an appeal will lie to the Cayman Court of Appeal without requiring the leave of the Cayman Court or of the Cayman Court of Appeal from any final, civil judgment, decree, order or

declaration of the Cayman Court. Subject to certain exceptions, an appeal will lie to the Cayman Court of Appeal only with the leave of the Cayman Court or of the Cayman Court of Appeal from any interlocutory, civil judgment, decree, order or declaration of the Grand Court.

18.    A further appeal may lie to the Privy Council in respect of a judgment, decree, order or declaration of the Court of Appeal.

### Stare Decisis

19.    The legal system of the Cayman Islands is an English-style common-law system based upon the doctrine of precedent.

20.    The *rationes decidendi* of decisions of the Privy Council in appeals from the Cayman Islands courts are binding on the Cayman Islands courts in subsequent cases. Where the law is the same, the Cayman Court also considers itself bound by the Privy Council decisions from other countries. The *rationes decidendi* of decisions of the Cayman Court of Appeal are binding on itself and on the Grand Court in subsequent cases. The *rationes decidendi* of decisions of the Cayman Court are normally followed by itself in subsequent cases.[1]

21.    In the absence of specific Cayman Islands binding authority, the Cayman Islands courts will regard as highly persuasive relevant decisions of the superior courts of record of England and Wales, although such decisions are not, strictly speaking, binding on the Cayman Islands courts. Similarly, relevant decisions of the senior courts of record of the other jurisdictions of the United Kingdom and of members (and former members) of the British Commonwealth are likely to have persuasive value in the Cayman Islands courts where the legal principle under consideration is the same or substantially the same.

---

[1] See, for instance, *Re Alibaba.com Limited* [2012] 1 CILR 272.

### The Cayman Companies Law

22.    . Cayman Islands companies are incorporated pursuant to the Cayman Companies Law.[2]  They are all required to maintain registered offices in the Cayman Islands to which all communications and notices may be addressed,[3] and where the administration of annual filings and the payment of annual fees with the Cayman Islands Registrar of Companies (**"Registrar"**) are usually attended to.[4]  Any document used in legal proceedings required to be formally served on a company may be served by hand or by prepaid post on the company at its registered office.[5] Cayman Islands companies are also required to maintain certain statutory registers (**"Registers"**), namely a Register of Members (*i.e.* shareholders), a Register of Mortgages and Charges and a Register of Directors (including alternate directors and officers).[6]

23.    One of the key aspects of the Cayman Islands legal system is the protection of creditors' and stakeholders' rights so as to provide certainty as to the enforceability of contractual rights, including but not limited to redemption requests on insolvency.

24.    These unique provisions are of course assisted by the Cayman Islands having a well- established and highly experienced professional infrastructure that is known for its depth and breadth of experience in cross-border issues as well as its responsiveness and efficiency.

---

[2] It is also possible to be incorporated by statute and by Royal Charter. For the purposes of this declaration references to "companies" means companies incorporated pursuant to the Cayman Companies Law.
[3] Section 50(1) of the Cayman Companies Law.
[4] Save for companies registered as "associations not for profit" by license of the Governor of the Cayman Islands pursuant to section 80 of the Companies Law and to which certain exceptions apply.
[5] Section 70 of the Cayman Companies Law.
[6] Sections 40, 54 and 55 of the Cayman Companies Law, respectively.

## Legislation for the Winding up of Cayman Islands Companies

25.    The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Cayman Companies Law.[7] The provisions of Part V apply to companies formed and registered under the Cayman Companies Law or its predecessors, including companies that are formed as exempted companies, and foreign companies in respect of which the Cayman Court has made a winding up order.

26.    The Cayman Companies Law provides for three different modes for winding up Cayman Islands companies, although there is considerable overlap of provisions relating to each system and relating to the powers and duties of the liquidators.   They are: (1) winding up by order of the Cayman Court, (2) voluntary winding-up initiated by a resolution of the shareholders, and (3) voluntary winding-up initiated by a resolution of the shareholders but subject to the supervision of the Cayman Court.   In this case, the winding up of Niton was initiated through a voluntary resolution of the shareholder, but is now subject to the supervision of the Cayman Court, and the Liquidators have been appointed as joint official liquidators.

27.    The substantive law contained in Part V of the Companies Law is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the Company Winding Up Rules, 2008 (as amended) (**"CWR"**), the Insolvency Practitioners Regulations 2008 (as amended) (**"Regulations"**) and the Grand Court Rules 1995 (**"GCR"**) (as amended), together with a detailed body of local case law.

## Winding-Up Proceedings and Appointment of Official Liquidators

---

[7] There are additional statutes relating to the winding up of those Cayman Islands companies that are regulated by CIMA, such as banks and insurance companies.

28.     Pursuant to section 92 of the Cayman Companies Law, a company may be wound up by the Cayman Court if, among other things, the company has passed a special resolution requiring same or if it is unable to pay its debts. The test that is applied to determine whether a company is unable to pay its debts is based on a cash-flow test of solvency. Pursuant to section 94 of the Cayman Companies Law, a creditor (including any contingent or prospective creditor), contributory (which for all practical purposes means a shareholder), or the company[8] can petition for the compulsory winding-up of a company on the grounds set out in section 92.[9] In this case, the winding up petition was filed on behalf of the Company by the Liquidators, after the resolution for such action was passed by the Company's voting shareholder.

29.     An official liquidator is an officer of the Cayman Court. Pursuant to section 110 of the Cayman Companies Law, his function is to "(a) collect, realise and distribute the assets of the company to its creditors and if there is a surplus, to the persons entitled to it, and (b) to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up."

30.     Except as otherwise ordered by the Cayman Court, Schedule 3 to the Cayman Companies Law sets out the powers that an official liquidator may exercise with and without the supervision of the Cayman Court. For example, generally, an official liquidator is authorized

---

[8] The orthodox common law position is that a company can only petition for its own winding up where the directors have obtained the authorization of the shareholders to do so by way of a shareholder resolution. *See Re Global Opportunity Fund* [1997] CILR N-7 applying *Re Emmadart* [1979] 1 All E.R. 599. Section 94(2) of the Cayman Companies Law was introduced in 2009 to allow companies incorporated after March 1, 2009 to include express authorization in their Articles of Association permitting the directors to file a winding up petition without the resolution of the shareholders passed at a general meeting. Neither was of assistance to Niton in the circumstances, as it was incorporated on August 8, 2005 and, being a publicly listed company, it would have been difficult to obtain a shareholder resolution on an expedited basis. While there is Cayman Islands authority for the proposition that the directors of an insolvent company have standing to bring a winding up petition without the need for shareholder authorization - *Re China Milk Products Group Limited* [2011] 2 CILR 61 -the correctness of this decision is open to doubt.

[9] CIMA may also do so if the company is carrying on regulated business.

and empowered to take the following actions subject to the Cayman Court's supervision, and any

creditor or party in interest may apply to the Cayman Court with respect to the exercise or

proposed exercise of such powers:

a.  Bring or defend any action or other legal proceeding in the name and on behalf
of the company;

b.  Carry on the business of the company so far as may be necessary for its
beneficial winding up;

c.  Dispose of any property of the company to a person who is or was related to
the company;

d.  Pay any class of creditors in full;

e.  Make any compromise or arrangement with creditors or persons claiming to be
creditors;

f.  Compromise debts and liabilities between the company and a contributory or
alleged contributory debtor or person apprehending liability to the company;

g.  Deal with all questions in any way relating to or affecting the assets or the
winding up of the company, to take any security for the discharge of such call,
debt, liability or claim, and to give a complete discharge in respect of it;

.h.  Sell any of the company's property by public auction or private contract with
power to transfer the whole of it to any person or to sell the same in parcels;

i.  Raise or borrow money and grant securities therefor over the property of the
company;

j.  Engage staff to assist in the performance of his duties; and

k.  Engage attorneys and other professionally qualifies persons to assist him in the
performance of his duties.

*See* Cayman Companies Law, Section 110, Schedule 3, Part 1.

31.  Schedule 3 further provides that an official liquidator is permitted to exercise the

following powers without the Cayman Court's supervision:

a.  Take possession of, collect and get in the property of the company, and for that
purpose to take all such proceedings as he considers necessary;

    b.      To do all acts and execute in the name and on behalf of the company all deeds, receipts and other documents and for that purpose to use the company seal;

    c.      To prove, rand and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance as a separate debt due from the bankrupt or insolvent and rateably with other creditors;

    d.      To draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company as if made by the company;

    e.      To promote a scheme of arrangement;

    f.      Convene a meeting of creditors and contributories; and

    g.      To do all other things incidental to the exercise of his powers.

*See* Cayman Companies Law, Section 110, Schedule 3, Part 2.

    32.    In this case, the Cayman Court has authorized the Liquidators to exercise certain of the Schedule 3 powers without supervision. In particular, the Cayman Court has authorized the Liquidators to: (i) bring or defend legal proceedings in Niton's name; (ii) dispose of any property of Niton to a person who is or was related to Niton; (iii) compromise debts and liabilities between Niton and a contributory or alleged contributory or other person apprehending liability to Niton; (iv) sell any of Niton's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels; and (v) to engage attorneys in various jurisdictions to assist the Liquidators in the performance of their functions from time to time as may be necessary. *See* Cayman Liquidation Order at ¶ 4. In my experience, it is fairly common for the Cayman Court to provide official liquidators with such authority. The Cayman Court also has authorized the Liquidators to retain U.S. counsel, the purpose of which retention was to file this Chapter 15 Petition seeking recognition of the Cayman Liquidation under Chapter 15 and additional relief under the Bankruptcy Code.

33.     Under the Cayman Companies Law, the official liquidator is also empowered to investigate (i) the causes for the failure of the debtor company's business, as well as (ii) generally, the promotion, business, dealings and affairs of the debtor company. *See* Cayman Companies Law, Section 102.

34.     A key principle underlying the Cayman Companies Law and the Cayman Liquidation is that the claims of investors and creditors within the same class are treated on a *pari passu* basis. *See* Cayman Companies Law Section 140. I understand that this is also a key principle of the Bankruptcy Code.

35.     In my experience, Cayman liquidation proceedings are fair and equitable. All creditors may have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it is foreign-based.

36.     Section 97(1) of the Cayman Companies Law provides that upon the entry of a winding up order, no suit or other proceeding may be commenced or continued against the company except with leave of the Cayman Court and subject to such terms as that Court might impose. This automatic stay mirrors the stay imposed in US bankruptcy proceedings and serves to promote the Liquidators' ability to deal with claims and creditors collectively and comprehensively.

37.     Additionally, under the law of the Cayman Islands, the Liquidators have a duty to realize all assets of Niton, including the investigation and prosecution of claims the company may hold against third parties.

38.     We are assisting the Liquidators in the investigation, coordination and analysis of potential claims that Niton may hold against third parties.

39.    Based upon our initial review, we believe that Niton's potential claims against third parties include (i) claims currently believed to be in the range of $36,893,950.00 against Dubai Trading Agency ("**DTA**"),a number of companies for which DTA is the holding company (the "**DTA Offshore Companies**"),[10] some of which have underlying SPVs (the "**DTA SPVs**")[11] relating to the Commercial Management Agreement dated July 18, 2011, with two addendums executed on October 16, 2011 and November 23, 2011, respectively ("**Commercial Management Agreement Claims**"); (ii) claims arising from the "loans" in respect of the Medium Term Shipping Fund  (the "**Medium Term Fund**") and Cor Asset Pool Limited ("**CAPL**"), which loans are believed to have been utilized to purchase vessels for the use and benefit of the Medium Term Fund and DTA (the "**Insider Loan Claims**"); and (iii) claims against directors and management for breach of fiduciary duty in relation to the unusual DTA-Medium Term Fund-Niton relationship ("**Duty Claims**").

---

[10] East Star Shipping Holdings Limited, Vectra Finance Limited, Morrito Maritime Inc., Green Star Marine Limited, Navramar Navigation S.A. and Montana Shipping Limited.

[11] The DTA Offshore Companies' SPV structure is believed to be as follows:

- East Star Shipping Holdings Limited is the 100% shareholder of Baltanas Shipping Limited; Virtad Navigation S.A.; Monteros Maritime Inc.; Navamosa Navigation S.A.; Paruma Maritime Inc., and Marbird Maritime Inc.

- Vectra Finance Limited is the 100% shareholder of Coral Bay Maritime Inc.; Markon Maritime Inc.; Nattadam Navigation S.A.; Sollyshim Shipping Limited; and Confidence Shipping Limited.

- Morrito Maritime Inc. is the 100% shareholder of Five Star Shipping Limited.

- Two other SPVs that are known to the JVLs within the DTA Group exist, namely: Pino Shipping Inc. and DTA Shipping Limited, which do not appear on the DTA Structure Chart.

The Liquidators further understand that the DTA Offshore Companies held credit facilities with particular banking institutions (each DTA Offshore Company using a different banking institution) and that the DTA SPVs underlying each respective DTA Offshore Company would ultimately utilize the credit facilities of the respective DTA Offshore Companies' banking facilities.

40.     Critical information concerning these Claims is located in the United States in the form of wire transfer records maintained by intermediary banks located in New York.

41.     In particular, all three of these types of Claims require accurately tracing and re-creating the flow of funds pertaining to U.S. dollar-denominated vessel sale and purchase transactions.

42.     The quantum of the Commercial Management Agreement Claims will depend on the precise profits and losses realized with respect to the dozens of vessels purchased, sold and re-sold Niton's behalf during the relevant time period.

43.     With respect to the Insider Loan Claims, determining the liquidity of and bank accounts of these loans initial transferees is critical to execute upon those loans in respect of the undisputed portion of these debts, as well as any civil claims that may arise in connection with the insider nature of these transactions.   Moreover, once it can be proved precisely how these funds were utilized, recoveries via tracing litigation and/or seizure of the relevant vessels can be obtained.

44.     Concerning the Duty Claims, while the Liquidators are still investigating the investment purpose and details surrounding the investments made on Niton's behalf by DTA in connection with the Commercial Management Agreement, DTA has represented that an unusual number of the Commercial Management Agreement transactions resulted in "losses" to Niton, raising the question of whether these were appropriate investments and whether breach of duties occurred.   The financial information relevant to this investigation is similar to the Commercial Management Agreement Claims.

### The Cayman Liquidation is a "foreign proceeding" within the Meaning of Section 101(23) of the Bankruptcy Code

45.    I am advised by U.S. counsel that "foreign proceeding" is defined in section

101(23) of the Bankruptcy Code to mean:

> "... a collective judicial or administrative proceeding in a foreign country,
> including an interim proceeding, under a law relating to insolvency or
> adjustment of debt in which proceeding the assets and affairs of the Debtors
> are subject to control or supervision by a foreign court, for the purpose of
> reorganisation or liquidation."

11 U.S.C. § 101(23).

46.    In my view, the Cayman Liquidation satisfies the above definition.  The Cayman

Liquidation was commenced pursuant to Part V of the Cayman Companies Law, which is our

law governing liquidation, insolvency and the adjustment of debts.  An official liquidation is a

court-supervised process that is commonly used to wind up Cayman Islands companies and in

which the rights of creditors and contributories (*i.e.* shareholders) vis-a-vis the debtor are

determined together.

### Liquidators are "foreign representatives" within
### the meaning of section 101(24) of the Bankruptcy Code

47.    I am also advised by U.S. counsel that "foreign representative" is defined in

section 101(24) of the Bankruptcy Code to mean:

> "... a person or body appointed on an interim basis, authorized in a foreign
> proceeding to administer the reorganization or the liquidation of the debtor's
> assets or affairs or to act as a representative of such foreign proceeding."

11 U.S.C. § 101(24).

48.    In my view, the Liquidators clearly satisfy the above definition.  As officers of the

Cayman Court, and duly appointed official liquidators of Niton, the Liquidators are duly

authorised and empowered by the Cayman Court by to administer the winding up of Niton as well

as to act as duly authorised representatives of Niton in the Cayman Liquidation.  As such, they

constitute its foreign representatives under 11 U.S.C. § 101(24).

## Cayman Islands Law Relevant to the Determination of COMI

49.    I am further advised by U.S. Counsel that certain other provisions of Cayman Islands law are relevant to the determination of Niton's centre of main interests ("**COMI**") under section 1517 of the Bankruptcy Code.  I have set out an overview of the relevant Cayman Islands law considerations below.

50.    As noted, Niton was established as a Cayman Islands registered, open-ended, exempted, segregated portfolio company.  A company incorporated under the Companies Law may be established as an "exempted" company or as an "ordinary" company.  Both types of company are required to make certain annual statutory filings with the Registrar.  However, an exempted company differs in that it is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands.[12] Specifically it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands (so it may employ staff or agents in the Cayman Islands or have offices in the Cayman Islands in furtherance of its business outside the Cayman Islands once it has obtained any appropriate trade licences).

51.    Although upon its incorporation Niton was restricted from carrying on business within the Cayman Islands, this did not mean that Niton had no presence at all in this jurisdiction.  For example, Niton's registered office prior to the commencement of the voluntary liquidation was located at CARD Corporate Services Limited, Zephyr House, 122 Mary Street, P.O. Box 70,9 Grand Cayman, KY1-1107, Cayman Islands, where Niton's annual filings with the

---

[12] Requirements are such that the operation of the proposed company must be "... *conducted mainly outside the* [Cayman] *Islands"*. See sections 163 and 165 of the Companies Law. Exempted companies are also required to file an annual return with the Registrar to this effect, along with its annual fees, pursuant to section 168(b) of the Companies Law.

Registrar were made. Niton's Registers also were maintained in the Cayman Islands, including its Register of Members, although exempted companies are not specifically obliged under the Companies Law to do so. So too, under Cayman law, situs of the shares of a Cayman Islands company is the place of its incorporation, *i.e.* the Cayman Islands. *See 160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. In addition, Niton was regulated by CIMA from the Cayman Islands.

52.     The restriction on the carrying on of an exempted company's business inside the Cayman Islands also does not apply after a company commences liquidation in the Cayman Islands.

53.     Once Niton was placed into voluntary liquidation, its registered office was transferred to The R&H Trust Co., Ltd., P.O. Box 897, Windward 1 Regatta Office Park, Key West Bay Road, Grand Cayman, KY1-1103,. Cayman Islands, for the purpose of the liquidation. It is a requirement of Cayman Islands law that at least one official liquidator be resident in the Cayman Islands, and here, both Liquidators are resident in Cayman.

54.     Under the Cayman Liquidation Order appointing them, the Liquidators were granted extensive powers as outlined above. *See supra* at ¶¶ 29-32. However, when the Liquidators are contemplating actions that are not expressly provided for in the Cayman Liquidation Order, they must seek the Cayman Court's sanction to do so.

55.     In practice, this means that not only is the management of Niton being conducted by the Liquidators from within the Cayman Islands, but that key aspects of that management is subject to the supervision of the Cayman Court. Accordingly, I submit that there is a substantial nexus to the Cayman Islands in respect of the operating control over Niton.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this _16th_ day of November, 2015.

_____

Stephen Leontsinis

# EXHIBIT 1

*Companies Law (2013 Revision)*

# CAYMAN ISLANDS



Supplement No. 6 published with Extraordinary Gazette No. 82 of 11th October, 2013.

## COMPANIES LAW

### (2013 REVISION)

Cap. 22 (Law 3 of 1961) of the 1963 Revised Edition of the Laws consolidated with Laws 12 of 1962, 9 of 1966, 1 of 1971, 7 of 1973, 24 of 1974, 25 of 1975, 19 of 1977, 16 of 1978, 8 of 1980, 21 of 1981, 34 of 1983, 2 of 1984, 22 of 1984, 15 of 1985, 38 of 1985, 24 of 1987, 14 of 1988, 14 of 1989, 10 of 1990, 3 of 1991, 23 of 1991 (part), 11 of 1992, 3 of 1993, 23 of 1993, 33 of 1993, 2 of 1994, 8 of 1994, 14 of 1996, 26 of 1997, 4 of 1998, 6 of 1998, 20 of 1998 (part), 5 of 1999, 7 of 2000 (part), 5 of 2001, 10 of 2001, 29 of 2001, 46 of 2001, 22 of 2002, 26 of 2002, 28 of 2003, 13 of 2006, 15 of 2007, 12 of 2009, 33 of 2009, 37 of 2010, 16 of 2011, 29 of 2011, 6 of 2012, 14 of 2012, 29 of 2012, 1 of 2013, 6 of 2013 and the Companies (Amendment of Schedule) Order, 2011.

*Companies Law (2013 Revision)*

Revised under the authority of the Law Revision Law (1999 Revision).

Originally enacted-

| | |
|---|---|
| Cap. 22-1st January, 1964 | Law 14 of 1996-5th September, 1996 |
| Law 9 of 1966-14th March, 1966 | Law 26 of 1997-15th December, 1997 |
| Law 1 of 1971-8th January, 1971 | Law 4 of 1998-4th March, 1998 |
| Law 7 of 1973-28th June, 1973 | Law 6 of 1998-9th March, 1998 |
| Law 24 of 1974-22nd November, 1974 | Law 20 of 1998-15th February, 1999 |
| Law 25 of 1975-9th December, 1975 | Law 5 of 1999-14th April, 1999 |
| Law 19 of 1977-10th November, 1977 | Law 7 of 2000- 20th July, 2000. |
| Law 16 of 1978-8th September, 1978 | Law 5 of 2001-20th April, 2001 |
| Law 6 of 1980-17th March, 1980 | Law 10 of 2001-25th May, 2001 |
| Law 21 of 1981-13th October, 1981 | Law 29 of 2001-26th September, 2001 |
| Law 34 of 1983-24th November, 1983 | Law 46 of 2001-14th January, 2002 |
| Law 2 of 1984-28th February, 1984 | Law 22 of 2002-5th December, 2002 |
| Law 22 of 1984-7th September, 1984 | Law 26 of 2002-5th December, 2002 |
| Law 15 of 1985-24th May, 1985 | Law 28 of 2003-3rd December, 2003 |
| Law 38 of 1985-19th December, 1985 | Law 13 of 2006-1st June, 2006 |
| Law 24 of 1987-17th November, 1987 | Law 15 of 2007-17th September, 2007 |
| Law 14 of 1988-9th September, 1988 | Law 12 of 2009-20th March, 2009 |
| Law 14 of 1989-5th September, 1989 | Law 33 of 2009-2nd December, 2009 |
| Law 10 of 1990-18th July, 1990 | Law 37 of 2010-15th September, 2010 |
| Law 3 of 1991-21st February, 1991 | Law 16 of 2011-11th April, 2011 |
| Law 23 of 1991-12th December, 1991 | Law 29 of 2011-18th November, 2011 |
| Law 11 of 1992-13th July, 1992 | Order of 2011-10th January, 2012 |
| Law 3 of 1993-26th March, 1993 | Law 6 of 2012-29th August, 2012 |
| Law 23 of 1993-29th September, 1993 | Law 14 of 2012-31st August, 2012 |
| Law 33 of 1993-29th November, 1993 | Law 29 of 2012-19th November, 2012 |
| Law 2 of 1994-9th March, 1994 | Law 1 of 2013-10th January, 2013 |
| Law 8 of 1994-23rd September, 1994 | Law 6 of 2013-15th March, 2013. |

Consolidated and revised this 31st day of July, 2013.

*Note (not forming part of the Law): This revision replaces the 2012 Revision which should now be discarded.*

2

*Companies Law (2013 Revision)*

(2)  Where a notice has been given by the transferee company under this section and the Court has not, on an application made by the dissenting shareholder, ordered to the contrary, the transferee company shall, on the expiration of one month from the date on which the notice has been given or, if an application to the Court by the dissenting shareholder is then pending, after that application has been disposed of, transmit a copy of the notice to the transferor company and pay or transfer to the transferor company the amount or other consideration representing the price payable by the transferee company for the shares which by virtue of this section that company is entitled to acquire, and the transferor company shall thereupon register the transferee company as the holder of those shares.

(3)  Any sums received by the transferor company under this section shall be paid into a separate bank account, and any such sums and any other consideration so received shall be held by that company on trust for the several persons entitled to the shares in respect of which the said sum or other consideration were respectively received.

(4)  In this section-

"dissenting shareholder" includes a shareholder who has not assented to the scheme or contract and any shareholder who has failed or refused to transfer his shares to the transferee company, in accordance with the scheme or contract.

## PART V - Winding up of Companies and Associations

### Introductory

Definitions

**89.**   In this Part-

"company" includes a foreign company in respect of which the Court has made a winding up order;

"contributory" means -

    (a)    every person liable by virtue of section 49 to contribute to the assets of a company in the event that it is wound up under this Law; and

    (b)    every holder of fully paid up shares of a company;

"controller" means a person appointed by the Authority pursuant to the regulatory laws to take control of a company;

"document" includes any device by means of which information is recorded or stored;

"foreign company" means any body corporate incorporated outside the Islands;

62

"foreign practitioner" means a person who is qualified under the law of a foreign country to perform functions equivalent to those performed by official liquidators under this Law or by trustees in bankruptcy under the Bankruptcy Law (1997 Revision);

1997 Revision

"limited partnership" means an ordinary limited partnership registered in accordance with section 49 of the Partnership Law (2013 Revision) or an exempted limited partnership registered in accordance with Section 9 of the Exempted Limited Partnership Law (2013 Revision);

2013 Revision

2013 Revision

"official liquidator" means the liquidator of a company which is being wound up by order of the Court or under the supervision of the Court and includes a provisional liquidator;

"prescribed" means prescribed by the Insolvency Rules Committee;

"professional service provider" means a person who contracts to provide general managerial or administrative services to a company on an annual or continuing basis;

"qualified insolvency practitioner" means a person holding the qualifications specified in the regulations made by the Insolvency Rules Committee under section 155 or such other qualifications as the Court considers appropriate for the conduct of the winding up of a company;

"Rules" mean rules prescribed by the Insolvency Rules Committee;

"shadow director" means, in relation to a company, any person in accordance with whose directions or instructions the directors of the company are accustomed to act, but the person is not deemed to be a shadow director by reason only that the directors act on advice given by him in a professional capacity; and

"winding up order" includes an order that a voluntary winding up continue under the supervision of the Court and references to a company being wound up by the Court includes a company which is being wound up under the supervision of the Court.

90.   A company may be wound up-

Alternative modes of winding up

    (a)   compulsorily by order of the Court;

    (b)   voluntarily-

        (i)    by virtue of a special resolution;

        (ii)   because the period, if any, fixed for the duration of the company by its articles of association has expired; or

        (iii)  because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or

    (c)   under the supervision of the Court.

63

*Companies Law (2013 Revision)*

Jurisdiction of the Court

**91.** The Court has jurisdiction to make winding up orders in respect of-

(a) an existing company;

(b) a company incorporated and registered under this Law;

(c) a body incorporated under any other law; and

(d) a foreign company which-

(i) has property located in the Islands;

(ii) is carrying on business in the Islands;

(iii) is the general partner of a limited partnership; or

(iv) is registered under Part IX.

## Winding up by the Court

Circumstances in which a company may be wound up by the Court

**92.** A company may be wound up by the Court if-

(a) the company has passed a special resolution requiring the company to be wound up by the Court;

(b) the company does not commence its business within a year from its incorporation, or suspends its business for a whole year;

(c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up;

(d) the company is unable to pay its debts; or

(e) the Court is of opinion that it is just and equitable that the company should be wound up.

Definition of inability to pay debts

**93.** A company shall be deemed to be unable to pay its debts if-

(a) a creditor by assignment or otherwise to whom the company is indebted at law or in equity in a sum exceeding one hundred dollars then due, has served on the company by leaving at its registered office a demand under his hand requiring the company to pay the sum so due, and the company has for the space of three weeks succeeding the service of such demand, neglected to pay such sum, or to secure or compound for the same to the satisfaction of the creditor;

(b) execution of other process issued on a judgement, decree or order obtained in the Court in favour of any creditor at law or in equity in any proceedings instituted by such creditor against the company, is returned unsatisfied in whole or in part; or

(c) it is proved to the satisfaction of the Court that the company is unable to pay its debts.

Application for winding up

**94. (1)** An application to the Court for the winding up of a company shall be by petition presented either by-

64

*Companies Law (2013 Revision)*

    (a)   the company;

    (b)   any creditor or creditors (including any contingent or prospective creditor or creditors);

    (c)   any contributory or contributories; or

    (d)   subject to subsection (4), the Authority pursuant to the regulatory laws.

(2) Where expressly provided for in the articles of association of a company the directors of a company incorporated after the commencement of this Law have the authority to present a winding up petition on its behalf without the sanction of a resolution passed at a general meeting.

(3) A contributory is not entitled to present a winding up petition unless either-

    (a)   the shares in respect of which he is a contributory, or some of them, are partly paid; or

    (b)   the shares in respect of which he is a contributory, or some of them, either were-

        (i)   originally allotted to him, or have been held by him, and registered in his name for a period of at least six months immediately preceding the presentation of the winding up petition; or

        (ii)   have devolved on him through the death of a former holder.

(4) A winding up petition may be presented by the Authority in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law.

95. (1) Upon hearing the winding up petition the Court may-          Powers of the Court

    (a)   dismiss the petition;

    (b)   adjourn the hearing conditionally or unconditionally;

    (c)   make a provisional order; or

    (d)   any other order that it thinks fit,

but the Court shall not refuse to make a winding up order on the ground only that the company's assets have been mortgaged or charged to an amount equal to or in excess of those assets or that the company has no assets.

(2) The Court shall dismiss a winding up petition or adjourn the hearing of a winding up petition on the ground that the petitioner is contractually bound not to present a petition against the company.

(3) If the petition is presented by members of the company as contributories on the ground that it is just and equitable that the company should

65

be wound up, the Court shall have jurisdiction to make the following orders, as an alternative to a winding-up order, namely-

    (a)   an order regulating the conduct of the company's affairs in the future;

    (b)   an order requiring the company to refrain from doing or continuing an act complained of by the petitioner or to do an act which the petitioner has complained it has omitted to do;

    (c)   an order authorising civil proceedings to be brought in the name and on behalf of the company by the petitioner on such terms as the Court may direct; or

    (d)   an order providing for the purchase of the shares of any members of the company by other members or by the company itself and, in the case of a purchase by the company itself, a reduction of the company's capital accordingly.

(4)   Where an alternative order under subsection (3) requires the company not to make any, or any specified, alteration in the memorandum or articles of association, the company does not have power, without the leave of the Court, to make any such alteration in breach of that requirement.

(5)   Any alteration in a company's memorandum or articles of association made by virtue of an alternative order under subsection (3) is of the same effect as if duly made by resolution of the company, and the provisions of this Law shall apply to the memorandum or articles of association as so altered accordingly.

(6)   A copy of an alternative order made under subsection (3) altering, or giving leave to alter, a company's memorandum or articles of association shall be filed by the company with the Registrar within fourteen days of the making of the order.

**Power to stay or restrain proceedings**

96.   At any time after the presentation of a winding up petition and before a winding up order has been made, the company or any creditor or contributory may-

    (a)   where any action or proceeding against the company, including a criminal proceeding, is pending in a summary court, the Court, the Court of Appeal or the Privy Council, apply to the court in which the action or proceeding is pending for a stay of proceedings therein; and

    (b)   where any action or proceeding is pending against the company in a foreign court, apply to the Court for an injunction to restrain further proceedings therein,

and the court to which application is made may, as the case may be, stay or restrain the proceedings accordingly on such terms as it thinks fit.

*Companies Law (2013 Revision)*

97. (1) When a winding up order is made or a provisional liquidator is appointed, no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with the leave of the Court and subject to such terms as the Court may impose.

*Avoidance of attachments and stay of proceedings*

(2) When a winding up order has been made, any attachment, distress or execution put in force against the estate or effects of the company after the commencement of the winding up is void.

98. When a winding up order is made, the liquidator shall-

*Notice of winding up order*

    (a) file a copy of the winding up order with the Registrar; and

    (b) publish notice of the winding up in the Gazette and any newspaper in which the winding up petition was advertised.

99. When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's members made after the commencement of the winding up is, unless the Court otherwise orders, void.

*Avoidance of property dispositions, etc*

100. (1) If, before the presentation of a petition for the winding up of a company by the Court-

*Commencement of winding up by Court*

    (a) a resolution has been passed by the company for voluntary winding up;

    (b) the period, if any, fixed for the duration of the company by the articles of association has expired; or

    (c) the event upon the occurrence of which it is provided by the articles of association that the company is to be wound up has occurred,

the winding up of the company is deemed to have commenced at the time of passing of the resolution or the expiry of the relevant period or the occurrence of the relevant event.

(2) In any other circumstance not specified in subsection (1), the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up.

101. (1) Where the Court has made a winding up order or appointed a provisional liquidator, the liquidator may require some or all of the persons mentioned in subsection (3) to prepare and submit to him a statement in the prescribed form as to the affairs of the company.

*Company's statement of affairs*

(2) The statement shall be verified by an affidavit sworn by the persons required to submit it and shall show-

67

(a)    particulars of the company's assets and liabilities, including contingent and prospective liabilities;

(b)    the names and addresses of any persons having possession of the company's assets;

(c)    the assets of the company held by those persons;

(d)    the names and addresses of the company's creditors;

(e)    the securities held by those creditors;

(f)    the dates when the securities were respectively given; and

(g)    such further or other information that the liquidator may require.

(3)    The persons referred to in subsection (1) are-

(a)    persons who are or have been directors or officers of the company;

(b)    persons who are or have been professional service providers to the company; and

(c)    persons who are or have been employees of the company, during the period of one year immediately preceding the relevant date.

(4)    Where any persons are required under this section to submit a statement of affairs to the liquidator, they shall do so, subject to subsection (5), before the end of the period of twenty-one days beginning with the day after that on which the prescribed notice of the requirement is given to them by the liquidator.

(5)    The liquidator may release a person from an obligation imposed on him under subsection (1) or, when giving the notice mentioned in subsection (4) or subsequently, the liquidator may extend the time for compliance; and if the liquidator refuses to extend the time for compliance, the Court may do so.

(6)    In this section-

"relevant date" means-

(a)    in a case where a provisional liquidator is appointed, the date of his appointment; and

(b)    in any other case, the commencement of the winding up.

(7)    A person who, without reasonable excuse, fails to comply with any obligation imposed under this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

Investigation by liquidator

102. (1)    Where a winding up order is made by the Court, the liquidator shall be empowered to investigate-

(a)    if the company has failed, the causes of the failure; and

(b)    generally, the promotion, business, dealings and affairs of the company,

68

*Companies Law (2013 Revision)*

and to make such report, if any, to the Court as he thinks fit.

(2)    Subject to obtaining the directions of the Court, the liquidator shall have power to -

    (a)    assist the Authority and the Royal Cayman Islands Police Force to investigate the conduct of persons referred to in section 101(3); and

    (b)    institute and conduct a criminal prosecution of persons referred to in section 101(3).

(3)    Subject to obtaining the prior approval of the company's creditors, if it is insolvent, or its contributories, if it is solvent, the directions given under subsection (2) may include a direction that the whole or part of the costs of investigation and prosecution be paid out of the assets of the company.

103. (1)    This section applies to any person who, whether resident in the Islands or elsewhere-

    (a)    has made or concurred with the statement of affairs;

    (b)    is or has been a director or officer of the company;

    (c)    is or was a professional service provider to the company;

    (d)    has acted as a controller, advisor or liquidator of the company or receiver or manager of its property;

    (e)    not being a person falling within paragraphs (a) to (c), is or has been concerned or has taken part in the promotion, or management of the company,

and such person is referred to in this section as the "relevant person".

*Duty to co-operate and the private examination of relevant persons*

(2)    It is the duty of every relevant person to co-operate with the official liquidator.

(3)    While a company is being wound up, the official liquidator may at any time before its dissolution apply to the Court for an order-

    (a)    for the examination of any relevant person; or

    (b)    that a relevant person transfer or deliver up to the liquidator any property or documents belonging to the company.

(4)    Unless the Court otherwise orders, the official liquidator shall make an application under subsection (3) if he is requested in accordance with the rules to do so by one-half, in value, of the company's creditors or contributories.

(5)    On an application made under subsection (3) (a), the Court may order that a relevant person-

    (a)    swear an affidavit in answer to written interrogatories;

*Companies Law (2013 Revision)*

    (b)   attend for oral examination by the official liquidator at a specified time and place, or

    (c)   do both things specified in paragraphs (a) and (b).

(6)   The Court may direct that any creditor or contributory of the company be permitted by the official liquidator to participate in an oral examination.

(7)   The Court shall have jurisdiction-

    (a)   to make an order under this section against a relevant person resident outside the Islands; and

    (b)   to issue a letter of request for the purpose of seeking the assistance of a foreign court in obtaining the evidence of a relevant person resident outside the jurisdiction.

### Official Liquidators

**Appointment and powers of provisional liquidator**

104. (1)   Subject to this section and any rules made under section 155, the Court may, at any time after the presentation of a winding up petition but before the making of a winding up order, appoint a liquidator provisionally.

(2)   An application for the appointment of a provisional liquidator may be made under subsection (1) by a creditor or contributory of the company or, subject to subsection (6), the Authority, on the grounds that-

    (a)   there is a *prima-facie* case for making a winding up order; and

    (b)   the appointment of a provisional liquidator is necessary in order to-

      (i)   prevent the dissipation or misuse of the company's assets;

      (ii)   prevent the oppression of minority shareholders; or

      (iii)   prevent mismanagement or misconduct on the part of the company's directors.

(3)   An application for the appointment of a provisional liquidator may be made under subsection (1) by the company *ex-parte* on the grounds that-

    (a)   the company is or is likely to become unable to pay its debts within the meaning of section 93; and

    (b)   the company intends to present a compromise or arrangement to its creditors.

(4)   A provisional liquidator shall carry out only such functions as the Court may confer on him and his powers may be limited by the order appointing him.

(5)   The remuneration of the provisional liquidator shall be fixed by the Court from time to time on his application and the Court shall in fixing such remuneration act in accordance with rules made under section 155.

70

*Companies Law (2013 Revision)*

(6)   An application for the appointment of a provisional liquidator may be presented by the Authority on the grounds under subsection (2), in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law regardless of whether or not the Authority presented the winding up petition.

105. (1)   For the purpose of conducting the proceedings in winding up a company and assisting the Court therein, there may be appointed one or more than one person to be called an official liquidator or official liquidators; and the Court may appoint to such office such person as it thinks fit, and if more persons than one are appointed to such office, the Court shall declare whether any act hereby required or authorised to be done by the official liquidator is to be done by all or any or more of such persons. *Appointment of official liquidator*

(2)   The Court may also determine whether any and what security is to be given by an official liquidator on his appointment; and if no official liquidator is appointed, or during any vacancy in such office, all the property of the company shall be in the custody of the Court.

(3)   The liquidator shall, within twenty-eight days of the date upon which the winding up order is made, summon-

(a)   a meeting of the company's creditors if the order was made on the grounds that the company is insolvent; or

(b)   a meeting of the company's contributories if the order was made on grounds other than insolvency,

for the purposes of resolving any other matters which the liquidator puts before the meeting.

(4)   The Court may make an order dispensing with the need to summon a meeting under this section or extending the time within which it shall be summoned.

106. When two or more persons are appointed to the office of liquidator, either provisionally or as official liquidators, they shall be authorised to act jointly and severally, unless their powers are expressly limited by order of the Court. *Appointment of joint liquidators*

107. An official liquidator may be removed from office by order of the Court made on the application of a creditor or contributory of the company. *Removal of official liquidators*

108. (1)   A foreign practitioner may be appointed to act jointly with a qualified insolvency practitioner. *Qualifications of official liquidators*

(2)   Official liquidators are officers of the Court.

71

*Companies Law (2013 Revision)*

**Remuneration of official liquidators**

109. (1)   The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

(2)   There shall be paid to the official liquidator such remuneration, by way of percentage or otherwise, that the Court may direct acting in accordance with rules made under section 155; and if more liquidators than one are appointed such remuneration shall be distributed amongst them in such proportions as the Court directs.

**Function and powers of official liquidators**

110. (1)   It is the function of an official liquidator-

(a)   to collect, realise and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it; and

(b)   to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up.

(2)   The official liquidator may-

**Schedule 3**

(a)   with the sanction of the Court, exercise any of the powers specified in Part I of Schedule 3; and

(b)   with or without that sanction, exercise any of the general powers specified in Part II of Schedule 3.

(3)   The exercise by the liquidator of the powers conferred by this section is subject to the control of the Court, and subject to subsection (5), any creditor or contributory may apply to the Court with respect to the exercise or proposed exercise of such powers (hereinafter referred to as a "sanction application").

(4)   In the case of-

(a)   a solvent company, a sanction application may only be made by a contributory and the creditors shall have no right to be heard;

(b)   an insolvent company, a sanction application may only be made by a creditor and the contributories shall have no right to be heard; and

(c)   a company whose solvency is doubtful, a sanction application may be made by both contributories and creditors and both contributories and creditors shall have a right to be heard.

(5)   For the purposes of this section, a person shall be treated as a related to a company if-

(a)   he has acted for the company as a professional service provider;

(b)   he is or was a shareholder or director of the company or of any other company in the same group as the company;

72

*Companies Law (2013 Revision)*

    (c)   he has a direct or indirect beneficial interest in the shares of the company; or

    (d)   he is a creditor or debtor of the company.

### General Powers of the Court

111. (1)  The Court may at any time after an order for winding up, on the application either of the liquidator or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed, make an order staying the proceedings either all together or for a limited time, on such terms and conditions as the Court thinks fit.

*Power to stay winding up*

(2)  The Court may at any time after the liquidation has commenced under section 116 (c), but before the final meeting has been held as provided for in section 127, on the application of the liquidator accompanied by-

    (a)   a special resolution stating that the company will not be wound up and setting out the reasons for such decision;

    (b)   proof of a recall notice published in the Gazette; and

    (c)   such other documents as the Court may consider necessary,

make an order to recall the liquidation, place the company into active status and place the company back into good standing as it was prior to the commencement of liquidation under section 116(c), on such terms and conditions as the Court thinks fit.

(3)  A company shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in the records relating to the company.

112. (1)  The liquidator shall settle a list of contributories, if any, for which purpose he shall have power to adjust the rights of contributories amongst themselves.

*Settlement of list of contributories*

(2)  In the case of a solvent liquidation of a company which has issued redeemable shares at prices based upon its net asset value from time to time, the liquidator shall have power to settle and, if necessary rectify the company's register of members, thereby adjusting the rights of members amongst themselves.

(3)  A contributory who is dissatisfied with the liquidator's determination may appeal to the Court against such determination.

113. (1)  The Court may, at any time after making a winding up order, and either before or after it has ascertained the sufficiency of the company's assets, make

*Power to make calls*

73

*Companies Law (2013 Revision)*

calls on all or any of the contributories for the time being settled on the list of the contributories-

    (a)   to the extent of their liability, for the payment of any money which the Court considers necessary to satisfy the company's debts and liabilities and the expenses of winding up; and

    (b)   to the adjustment of the rights of the contributories among themselves,

and make an order for payment of any call so made.

    (2)   In making a call the Court may take into consideration the probability that some of the contributories may partly or wholly fail to pay it.

**Inspection of documents by creditors, etc**

114. (1)   At any time after making a winding up order the Court may make such orders as it thinks fit for-

    (a)   the inspection of the company's documents by creditors and contributories; and

    (b)   the preparation of reports by the official liquidator and the provision of such reports to the company's creditors and contributories.

    (2)   A contributory shall be entitled to make an application under this section notwithstanding that the company is or may be insolvent and the Court shall not refuse to make an order upon the application of a contributory merely by reason of the fact that the company is or may be insolvent.

**Meetings to ascertain wishes of creditors or contributories**

115. (1)   The Court shall, as to all matters relating to the winding up, have regard to wishes of the creditors or contributories and for that purpose it may direct reports to be prepared by the official liquidator and meetings of creditors or contributories to be summoned.

    (2)   If it considers it necessary to do so, the Court may direct that separate meetings be held of different classes of creditors or contributories.

    (3)   Subject to Rules made under section 155, meetings may be requisitioned by creditors, if the company is insolvent, or by contributories if the company is solvent.

    (4)   The votes of creditors and contributories shall be counted by reference to-

    (a)   the value of their debts, in the case of creditors;

    (b)   the number of votes, in the case of contributories whose shares carry voting rights under the articles of association of the company; and

74

*Companies Law (2013 Revision)*

    (c)   the par value of all the shares held, in the case of contributories whose shares do not carry votes under the articles of association of the company and, where there are no par value shares, the net asset value of the company shown.

## Voluntary Winding up

116. A company incorporated and registered under this Law or an existing company may be wound up voluntarily-

    (a)   when the period, if any, fixed for the duration of the company by its memorandum or articles of association expires;

    (b)   if the event, if any, occurs, on the occurrence of which the memorandum or articles of association provide that the company is to be wound up;

    (c)   if the company resolves by special resolution that it be wound up voluntarily; or

    (d)   if the company in general meeting resolves by ordinary resolution that it be wound up voluntarily because it is unable to pay its debts as they fall due.

*Circumstances in which a company may be wound up voluntarily*

117. (1)  A voluntary winding up is deemed to commence-

    (a)   at the time of the passing of the resolution for winding up; or

    (b)   on the expiry of the period or the occurrence of the event specified in the company's memorandum or articles of association,

*Commencement of winding up*

notwithstanding that a supervision order is subsequently made by the Court.

    (2)  Subject to any contrary provision in its memorandum or articles of association, the voluntary winding up of an exempted limited duration company is taken to have commenced upon the expiry of a period of ninety days starting on-

    (a)   the death, insanity, bankruptcy, dissolution, withdrawal, retirement or resignation of a member of the company;

    (b)   the redemption, repurchase or cancellation of all the shares of a member of the company; or

    (c)   the occurrence of any event which, under the memorandum or articles of association of the company, terminates the membership of a member of the company,

unless there remain at least two members of the company and the company is continued in existence by the unanimous resolution of the remaining members pursuant to amended memorandum and articles of association adopted during that period of ninety days.

*Companies Law (2013 Revision)*

**Effect on business and status of the company**

118. (1)  In the case of a voluntary winding up, the company shall from the commencement of its winding up cease to carry on its business except so far as it may be beneficial for its winding up.

(2)  Notwithstanding anything to the contrary contained in the company's articles of association, its corporate state and powers shall continue until the company is dissolved.

**Appointment of voluntary liquidator**

119. (1)  One or more liquidators shall be appointed for the purpose of winding up the company's affairs and distributing its assets.

(2)  When the winding up has commenced in accordance with the company's memorandum or articles of association upon the termination of a fixed period or the occurrence of an event-

    (a)  the persons designated as liquidators in the memorandum or articles of association shall become such liquidators automatically from the commencement of the winding up; or

    (b)  if no such person is designated in the memorandum or articles of association or the person designated is unable or unwilling to act, the directors shall convene a general meeting of the company for the purpose of appointing a liquidator.

(3)  Except in the case of a person designated as liquidator in the company's memorandum or articles of association, the appointment of a voluntary liquidator shall take effect upon the filing of his consent to act with the Registrar.

(4)  If a vacancy occurs by death, resignation or otherwise in the office of voluntary liquidator appointed by the company-

    (a)  the company in a general meeting may fill the vacancy; or

    (b)  the Court may fill the vacancy on the application of any contributory or creditor.

(5)  On the appointment of a voluntary liquidator all the powers of the directors cease, except so far as the company in a general meeting or the liquidator sanctions their continuance.

(6)  When two or more persons are appointed as voluntary liquidators jointly, they shall be authorised to act jointly and severally unless their powers are expressly limited by the resolution or articles of association under which they are appointed.

**Qualifications of voluntary liquidators**

120. Any person, including a director or officer of the company, may be appointed as its voluntary liquidator.

76

*Companies Law (2013 Revision)*

121. (1)   A voluntary liquidator may be removed from office by a resolution of the company in a general meeting convened especially for that purpose.

Removal of voluntary liquidators

(2)   A general meeting of the company for the purpose of considering a resolution to remove its voluntary liquidator may be convened by any shareholder or shareholders holding not less than one fifth of the company's issued share capital.

(3)   Whether or not a general meeting has been convened in accordance with subsection (2), any contributory may apply to the Court for an order that a voluntary liquidator be removed from office on the grounds that he is not a fit and proper person to hold office.

122. (1)   Where two or more persons are appointed as joint voluntary liquidators, they may resign by filing a notice of resignation with the Registrar, so long as at least one of them continues in office.

Resignation of voluntary liquidator

(2)   Except as provided in subsection (1), a voluntary liquidator wishing to resign shall-

    (a)   prepare a report and accounts; and

    (b)   convene a general meeting of the company for the purpose of accepting his resignation and releasing him from the performance of any further duties, and shall cease to hold office with effect from the date upon which the resolution is passed.

(3)   In the event that the company fails to pass a resolution accepting his resignation, the voluntary liquidator may apply to the Court for an order that he be released from the performance of any further duties.

123. (1)   Within twenty-eight days of the commencement of a voluntary winding up, the liquidator or, in the absence of any liquidator, the directors shall-

Notice of voluntary winding up

    (a)   file notice of the winding up with the Registrar;

    (b)   file the liquidator's consent to act with the Registrar;

    (c)   file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);

    (d)   in the case of a company carrying on a regulated business, serve notice of the winding up upon the Monetary Authority; and

    (e)   publish notice of the winding up in the Gazette.

(2)   A director or liquidator who fails to comply with this section commits an offence and is liable to a fine of ten thousand dollars.

124. (1)   Where a company is being wound up voluntarily its liquidator shall apply to the Court for an order that the liquidation continue under the supervision of the Court unless, within twenty-eight days of the commencement of the

Application for supervision order

77

liquidation, the directors have signed a declaration of solvency in the prescribed form in accordance with subsection (2).

(2)  A declaration of solvency means a declaration or affidavit in the prescribed form to the effect that a full enquiry into the company's affairs has been made and that to the best of the directors' knowledge and belief the company will be able to pay its debts in full together with interest at the prescribed rate, within such period, not exceeding twelve months from the commencement of the winding up, as may be specified in the declaration.

(3)  A person who knowingly makes a declaration under this section without having reasonable grounds for the opinion that the company will be able to pay its debts in full, together with interest at the prescribed rate, within the period specified commits an offence and is liable on summary conviction to a fine of ten thousand dollars and to imprisonment for two years.

Avoidance of share transfers

125.  Any transfer of shares, not being a transfer with the sanction of the liquidator, and any alteration in the status of the company's members made after the commencement of a voluntary winding up is void.

General meeting at year's end

126. (1)  In the event of a voluntary winding up continuing for more than one year, the liquidators shall summon a general meeting of the company at the end of the first year from the commencement of the winding up and at the end of each succeeding year and such meetings shall be held within three months of each anniversary of the commencement of the liquidation.

(2)  At each meeting the liquidator shall lay before the meeting a report and account of his acts and dealings and the conduct of the winding up during the preceding year.

(3)  A liquidator who fails to comply with this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

Final meeting prior to dissolution

127. (1)  As soon as the company's affairs are fully wound up, the liquidator shall make a report and an account of the winding up showing how it has been conducted and how the company's property has been disposed off and thereupon shall call a general meeting of the company for the purpose of laying before it the account and giving an explanation for it.

(2)  At least twenty-one days before the meeting the liquidator shall send a notice specifying the time, place and object of the meeting to each contributory in any manner authorised by the company's articles of association and published in the Gazette.

*Companies Law (2013 Revision)*

(3)   The liquidator shall, no later than seven days after the meeting, make a return to the Registrar in the prescribed form specifying-

    (a)   the date upon which the meeting was held; and

    (b)   if a quorum was present, particulars of the resolutions, if any, passed at the meeting.

(4)   A liquidator who fails to call a general meeting of the company as required by subsection (1) or fails to make a return as required by subsection (3) commits an offence and is liable on conviction to a fine of ten thousand dollars.

128.   Where a company limited by guarantee and having a capital divided into shares is being wound up voluntarily, any share capital that may not have been called upon shall be deemed to be an asset of the company, and to be a speciality debt due from each member to the company to the extent of any sums that may be unpaid on any shares held by him, and payable at such time as may be appointed by the liquidator.

*Effect of winding up on share capital of company limited by guarantee*

129. (1)   The voluntary liquidator or any contributory may apply to the Court to determine any question arising in the voluntary winding up of a company or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the Court might exercise if the company were being wound up under the supervision of the Court.

*Reference of questions to Court*

(2)   The Court, if satisfied that the determination of the question or the required exercise of power will be just and beneficial, may accede wholly or partly to the application on such terms and conditions as it thinks fit, or make such other order on the application as it thinks just.

(3)   The voluntary liquidator shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in his records relating to the company.

130. (1)   The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

*Expenses of voluntary winding up*

(2)   The rate and amount of the liquidator's remuneration shall be fixed and payment authorised by resolution of the company.

(3)   Each report and account laid before the company in general meetings by its liquidator shall contain all such information, including the rate at which the liquidator's remuneration is calculated and particulars of the work done, as may be necessary to enable the members to determine what expenses have been properly incurred and what remuneration is properly payable to the liquidator.

*Companies Law (2013 Revision)*

(4) If the company fails to approve the liquidator's remuneration and expenses or the liquidator is dissatisfied with the decision of the company, he may apply to the Court which shall fix the rate and amount of his remuneration and expenses.

### Winding up subject to the supervision of the Court

Application for supervision order

131. When a resolution has been passed by a company to wind up voluntarily, the liquidator or any contributory or creditor may apply to the Court for an order for the continuation of the winding up under the supervision of the Court, notwithstanding that the declaration of solvency has been made in accordance with section 124, on the grounds that-

    (a)    the company is or is likely to become insolvent; or

    (b)    the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors.

Appointment of official liquidator

132. (1)   When making a supervision order the Court-

    (a)    shall appoint one or more qualified insolvency practitioners; and

    (b)    may, in addition, appoint one or more foreign practitioners,

as liquidator or liquidators of the company and section 105 shall apply as if the Court had made a winding up order.

(2)   Unless a voluntary liquidator is appointed as an official liquidator, he shall prepare a final report and accounts within twenty-eight days from the date of the supervision order.

Effect of supervision order

133. A supervision order shall take effect for all purposes as if it was an order that the company be wound up by the Court except that-

    (a)    the liquidation commenced in accordance with section 117; and

    (b)    the prior actions of the voluntary liquidator shall be valid and binding upon the company and its official liquidator.

### Offences of fraud, etc.

Fraud, etc in anticipation of winding up

134. (1)   Where a company is ordered to be wound up by the Court, or passes a resolution for voluntary winding up, any person, who is or was an officer, professional service provider, voluntary liquidator or controller of the company and who, within the twelve months immediately preceding the commencement of the winding up, has-

80

*Companies Law (2013 Revision)*

(a) concealed any part of the company's property to the value of ten thousand dollars or more or concealed any debt due to or from the company;

(b) removed any part of the company's property to the value of ten thousand dollars or more;

(c) concealed, destroyed, mutilated or falsified any documents affecting or relating to the company's property or affairs;

(d) made any false entry in any documents affecting or relating to the company's property or affairs;

(e) parted with, altered or made any omission in any document affecting or relating to the company's property or affairs; or

(f) pawned, pledged or disposed of any property of the company which has been obtained on credit and has not been paid for (unless the pawning, pledging or disposal was in the ordinary way of the company's business),

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

(2)    In this section-

"officer" includes a shadow director.

135. Where a company is ordered to be wound up by the Court or passes a resolution for voluntary winding up, any officer or professional service provider of the company who-  *Transactions in fraud of creditors*

(a) has made or caused to be made any gift or transfer of, or charge on, or has caused or connived at the levying of any execution against, the company's property; or

(b) has concealed or removed any part of the company's property,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

136. (1)  Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, officer or professional service provider of the company and who-  *Misconduct in course of winding up*

(a) does not to the best of his knowledge and belief fully and truly discover to the liquidator-

(i) all the company's property (except such part as has been disposed of in the ordinary way of the company's business);

(ii) the date on which and manner in which the company's property or any part thereof property was disposed of, if it was disposed of;

81

*Companies Law (2013 Revision)*

      (iii)  the persons to whom any property was transferred, if it was disposed of; or

      (iv)  the consideration paid for any property which was disposed of;

(b)  does not deliver up to the liquidator or does not deliver up in accordance with the directions of the liquidator any of company's property which is in his custody or under his control, and which he is required by law to deliver up;

(c)  does not deliver up to the liquidator or does not deliver up, in accordance with the directions of the liquidator, all documents in his custody or under his control which belong to the company and which he is required by law to deliver up;

(d)  knows or believes that a false debt has been proved by any person in the winding up and fails to inform the liquidator of such knowledge or belief as soon as practicable;

(e)  prevents the production of any document affecting or relating to the company's property or affairs; or

(f)  destroys, mutilates, alters or falsifies any books, papers or securities, or makes or is privy to the making of any false or fraudulent entry in any register, book of account or document belonging to the company,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine of twenty five thousand dollars or to imprisonment for a term of five years, or to both.

(2)  In this section—

"officer" includes a shadow director.

Material omissions from statement relating to company's affairs

137. (1)  Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, an officer a manager or a professional service provider of the company, commits an offence if he makes any material omission in any statement relating to the company's affairs, with intent to defraud the company's creditors or contributories.

(2)  A person who commits an offence under subsection (1) is liable on conviction to a fine of twenty-five thousand dollars or to imprisonment for a term of five years, or to both.

(3)  In this section—

"officer" includes a shadow director.

82

*Companies Law (2013 Revision)*

### General provisions

138. (1)   Where any person has in his possession any property or documents to which the company appears to be entitled, the Court may require that person to pay, transfer or deliver such property or documents to the official liquidator.

Getting in the company's property

(2)   Where the official liquidator seizes or disposes of any property which he reasonably believed belonged to the company, he shall not be personally liable for any loss or damage caused to its true owner except in so far as such losses or damage is caused by his own negligence.

139. (1)   All debts payable on a contingency and all claims against the company whether present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company and the official liquidator shall make a just estimate so far as is possible of the value of all such debts or claims as may be subject to any contingency or sound only in damages or which for some other reason do not bear a certain value.

Provable debts

(2)   Foreign taxes, fines and penalties shall be admissible to proof against the company only if and to the extent that a judgement in respect of the same would be enforceable against the company pursuant to the Foreign Judgements Reciprocal Enforcement Law (1996 Revision) or any laws permitting the enforcement of foreign taxes, fines and penalties.

1996 Revision

140. (1)   Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu* and subject thereto shall be distributed amongst the members according to their rights and interests in the company.

Distribution of the company's property

(2)   The collection in and application of the property of the company referred to in subsection (1) is without prejudice to and after taking into account and giving effect to the rights of preferred and secured creditors and to any agreement between the company and any creditors that the claims of such creditors shall be subordinated or otherwise deferred to the claims of any other creditors and to any contractual rights of set-off or netting of claims between the company and any person or persons (including without limitation any bilateral or any multi-lateral set-off or netting arrangements between the company and any person or persons) and subject to any agreement between the company and any person or persons to waive or limit the same.

(3)   In the absence of any contractual right of set-off or non set-off, an account shall be taken of what is due from each party to the other in respect of their mutual dealings, and the sums due from one party shall be set-off against the sums due from the other.

*Companies Law (2013 Revision)*

(4)    Sums due from the company to another party shall not be included in the account taken under subsection (3) if that other party had notice at the time they became due that a petition for the winding up of the company was pending.

(5)    Only the balance, if any, of the account taken under subsection (3) shall be provable in the liquidation or, as the case may be, payable to the liquidator as part of the assets.

Preferential debts Schedule 2

141. (1)    In the case of an insolvent company, the debts described in Schedule 2 shall be paid in priority to all other debts.

(2)    The preferential debts shall-

(a)    rank equally amongst themselves and be paid in full unless the assets available, after having exercised any rights of set-off or netting of claims, are insufficient to meet them in which case they shall abate in equal proportions; and

(b)    so far as the assets of the company available for payment of general creditors are insufficient to meet them, have priority over the claims of holders of debentures secured by, or holders of any floating charge created by the company, and be paid accordingly out of any property comprised in or subject to that charge.

Secured creditors

142. (1)    Notwithstanding that a winding up order has been made, a creditor who has security over the whole or part of the assets of a company is entitled to enforce his security without the leave of the Court and without reference to the liquidator.

(2)    Where the liquidator sells assets on behalf of a secured creditor, he is entitled to deduct from the proceeds of sale a sum by way of remuneration equivalent to that which is or would be payable under section 109.

Preferential charge on goods distrained

143. In the event of a landlord or other person entitled to receive rent distraining or having distrained on any goods or effects of the company within three months preceding the date of the winding up order, the debts to which priority is given by section 141 shall be a first charge on the goods or effects so distrained on or the proceeds of sale thereof.

Effect of execution or attachment

144. (1)    Where a creditor has issued execution against the goods or land of a company or has attached any debt due to it, and the company is subsequently wound up, he is not entitled to retain the benefit of the execution or attachment against the liquidator unless he has completed the execution or attachment before the commencement of the winding up.

(2)    Notwithstanding subsection (1)-

84

*Companies Law (2013 Revision)*

(a) where a creditor has had notice of a meeting having been called at which a resolution for voluntary winding up is to be proposed, the date on which he had notice is substituted for the purpose of subsection (1) for the date of commencement of the winding up;

(b) a person who purchases in good faith under a sale by the bailiff any goods of a company on which execution has been levied in all cases acquires a good title to them against the liquidator; and

(c) the rights conferred by subsection (1) on the liquidator may be set aside by the Court in favour of the creditor to such extent and subject to such terms as the Court thinks fit.

(3) For the purposes of this Law-

(a) an execution against goods is completed by seizure and sale;

(b) an execution against securities is completed upon making a charging order absolute;

(c) an attachment of a debt is completed by receipt of the debt; and

(d) an execution against land is completed by the registration of a charging order.

145. (1) Every conveyance or transfer of property, or charge thereon, and every payment obligation and judicial proceeding, made, incurred, taken or suffered by any company in favour of any creditor at a time when the company is unable to pay its debts within the meaning of section 93 with a view to giving such creditor a preference over the other creditors shall be invalid if made, incurred, taken or suffered within six months immediately preceding the commencement of a liquidation. *Voidable preference*

(2) A payment made as aforesaid to a related party of the company shall be deemed to have been made with a view to giving such creditor a preference.

(3) For the purposes of this section a creditor shall be treated as a "related party" if it has the ability to control the company or exercise significant influence over the company in making financial and operating decisions.

146. (1) In this section and section 147- *Avoidance of dispositions made at an undervalue 2011 Revision*

(a) "disposition" has the meaning ascribed in Part VI of the Trusts Law (2011 Revision);

(b) "intent to defraud" means an intention to wilfully defeat an obligation owed to a creditor;

(c) "obligation" means an obligation or liability (which includes a contingent liability) which existed on or prior to the date of the relevant disposition;

(d) "transferee" means the person to whom a relevant disposition is made and shall include any successor in title; and

85

*Companies Law (2013 Revision)*

    (e)   "undervalue" in relation to a disposition of a company's property means-

      (i)  the provision of no consideration for the disposition; or

     (ii)  a consideration for the disposition the value of which in money or monies worth is significantly less than the value of the property which is the subject of the disposition.

(2)   Every disposition of property made at an undervalue by or on behalf of a company with intent to defraud its creditors shall be voidable at the instance of its official liquidator.

(3)   The burden of establishing an intent to defraud for the purposes of this section shall be upon the official liquidator.

(4)   No action or proceedings shall be commenced by an official liquidator under this section more than six years after the date of the relevant disposition.

(5)   In the event that any disposition is set aside under this section, then if the Court is satisfied that the transferee has not acted in bad faith-

    (a)   the transferee shall have a first and paramount charge over the property, the subject of the disposition, of an amount equal to the entire costs properly incurred by the transferee in the defence of the action or proceedings; and

    (b)   the relevant disposition shall be set aside subject to the proper fees, costs, pre-existing rights, claims and interests of the transferee (and of any predecessor transferee who has not acted in bad faith).

**Fraudulent trading**    **147.** (1)   If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose the liquidator may apply to the Court for a declaration under this section.

(2)   The Court may declare that any persons who were knowingly parties to the carrying on of the business in the manner mentioned in subsection (1) are liable to make such contributions, if any, to the company's assets as the Court thinks proper.

**Supply of utilities**    **148.** (1)   If a request is made by or with the concurrence of the liquidator (including a provisional liquidator) for the giving, after the effective date, of any of the supplies mentioned in the subsection (2), the supplier-

    (a)   may make it a condition of the giving of the supply that the liquidator personally guarantees the payment of any charges in respect of the supply; but

86

*Companies Law (2013 Revision)*

    (b)   shall not make it a condition of the giving of the supply, or do anything which has the effect of making it a condition of the giving of the supply, that any outstanding charges in respect of a supply given to the company before the effective date are paid.

  (2)   The supplies referred to in subsection (1) are-

    (a)   a supply of electricity;

    (b)   a supply of water; and

    (c)   a supply of telecommunication services.

  (3)   In this section-

"effective date" means-

    (a)   the date on which the provisional liquidator was appointed; or

    (b)   the date on which the winding up order was made.

149. (1)   Subject to subsection (5), in a winding up interest is payable in accordance with this section on any debt proved in the winding up, including so much of any such debt as represents interest on the remainder of the debt.    *Interest on debts*

  (2)   Any surplus remaining after the payment of the debts proved in a winding up shall, before being applied for any other purpose, be applied in paying interest on those debts in respect of the period during which they have been outstanding since the company went into liquidation.

  (3)   All interest under this section ranks equally, whether or not the debts on which it is payable ranked equally.

  (4)   The rate of interest payable under this section in respect of any debt is the greater of -

    (a)   the rate applicable to the currency of the liquidation prescribed from time to time by the Judgment Debts (Rates of Interest) Rules made under section 34 of the Judicature Law (2013 Revision); and    *2013 Revision*

    (b)   the rate applicable to that debt apart from the winding up.

  (5)   No interest shall be payable if the liquidation is concluded in less than six months or the accrued amount is less than five hundred dollars.

150. (1)   In the case of a solvent liquidation, a company's creditors are entitled to receive payment of their debts in the currency of the obligation.    *Currency of the liquidation*

  (2)   In the case of an insolvent liquidation, a company's liabilities shall be translated into the functional currency of the company at the exchange rates ruling-

*Companies Law (2013 Revision)*

    (a)   on the date of the commencement of the voluntary liquidation; or

    (b)   on the day upon which the winding up order is made.

(3)   For the purposes of this section the functional currency of a company is the currency of the primary economic environment in which it operated as at the commencement of the liquidation.

### Dissolution of a Company

**Dissolution following voluntary winding up**

151. (1)   The Registrar shall, within three days of receiving a liquidator's return under section 127(3), register such return.

(2)   Upon the expiration of three months from the registration of the return the company is deemed to be dissolved.

(3)   Notwithstanding subsection (2), the Court may, on the application of the liquidator or any other person who appears to the Court to be interested, make an order deferring the date at which the dissolution of the company is to take effect to such date as the Court thinks fit.

(4)   An application under this section shall not be made after the company is deemed to have been dissolved.

(5)   An order of the Court made under this section shall be registered with the Registrar within seven days of the date upon which it was made.

**Dissolution following winding up by the Court**

152. (1)   When the affairs of the company have been completely wound up, the Court shall make an order that the company be dissolved from the date of that order or such other date as the Court thinks fit, and the company shall be dissolved accordingly.

(2)   The effect of an order for dissolution in respect of a segregated portfolio is that its creditors' claims against the company shall be extinguished, notwithstanding that the company has not been liquidated and dissolved.

(3)   The official liquidator shall file the order for dissolution with the Registrar.

(4)   An official liquidator who fails to file the order for dissolution with the Registrar within fourteen days from the date upon which it was perfected, commits an offence and is liable on summary conviction to a penalty of ten dollars for every day during which he is so in default.

**Unclaimed dividends and undistributed assets**

153. (1)   Any unclaimed dividends or undistributed assets in the possession or control of the liquidator or former liquidator of a company shall be held by him as

88

*Companies Law (2013 Revision)*

trustee upon trust for the benefit of the contributories or creditors to whom such funds are owed.

(2)   At the end of one year after the dissolution of the company, the former liquidator shall transfer any funds or other assets held on trust by him to the Financial Secretary who shall manage them in accordance with Part VIII of the Public Management and Finance Law (2013 Revision).

*2013 Revision*

## Insolvency rules and regulations

154. (1)   There shall be established an Insolvency Rules Committee comprising-

*Insolvency Rules Committee*

    (a)   the Chief Justice or other judge nominated by the Chief Justice in his place who shall be chairman;

    (b)   the Attorney General or his nominee;

    (c)   the legal practitioner members of the Grand Court Rules Committee;

    (d)   a qualified insolvency practitioner appointed by the Chief Justice upon the recommendation of the Cayman Islands Society of Professional Accountants; and

    (e)   a person appointed by the Chief Justice who, in his opinion, demonstrates a wide knowledge of law, finance, financial regulation or insolvency practice.

(2)   The quorum of the Insolvency Rules Committee shall be the chairman and three other members of the Committee; and the chairman shall have a casting vote.

155. (1)   The Insolvency Rules Committee shall have power-

*Powers of the Insolvency Rules Committee*

    (a)   to make rules and prescribe forms for the purpose of giving effect to Parts IV, V and XVI;

    (b)   to prescribe court fees to be paid in connection with -

       (i)   applications under Part IV;

      (ii)   winding up proceedings under Part V; and

     (iii)   applications under Part XVI; and

    (c)   to make rules for the purpose of specifying -

       (i)   the qualifications which must be held by a person appointed to the office of official liquidator;

      (ii)   persons who are disqualified from holding office as official liquidator either generally or in relation to a particular company which is not in liquidation before the court;

     (iii)   the nature and scope of professional indemnity insurance, if any, required to be held by persons appointed to the office of official liquidators; and

*Companies Law (2013 Revision)*

(iv)    the nature and scope of security bonds, if any, required to be posted by persons appointed to the office of official liquidator.

(2)    The Insolvency Rules Committee, after consultation with the Authority and with any organisation representing insolvency practitioners in the Islands, shall make rules prescribing the rates of fees which may be charged by an official liquidator.

### PART VI - Removal of Defunct Companies

Company not operating may be struck off register

156. (1)    Where the Registrar has reasonable cause to believe that a company is not carrying on business or is not in operation, he may strike the company off the register and the company shall thereupon be dissolved.

(2)    A request on behalf of the company to strike the company off the register shall be accompanied by a fee of seventy-five dollars.

Company being wound up may be struck off register for want of liquidator, etc

157. Where a company is being wound up, and the Registrar has reasonable cause to believe either that no liquidator is acting, or that the affairs of the company are fully wound up, he may strike the company off the register and the company shall thereupon be dissolved.

Registrar to publish fact of company being struck off register

158. The Registrar shall immediately publish a Government Notice to the effect that the company in question has been struck off the register, the date on which it has been struck off and the reason therefor. Such notice shall be gazetted.

Company, creditor or member may apply to court for company to be reinstated

159. If a company or any member or creditor thereof feels aggrieved by the company having been struck off the register in accordance with this Law, the Court on the application of such company, member or creditor made within two years or such longer period not exceeding ten years as the Governor in Cabinet may allow of the date on which the company was so struck off, may, if satisfied that the company was, at the time of the striking off thereof, carrying on business or in operation, or otherwise, that it is just that the company be restored to the register, order the name of the company to be restored to the register, on payment by the company of a re-instatement fee equivalent to the original incorporation or registration fee and on such terms and conditions as to the Court may seem just, and thereupon the company shall be deemed to have continued in existence as if its name had not been struck off; and the Court may, by the same or any subsequent order, give such directions and make such provisions as seem just for placing the company and all other persons in the same position as nearly as may be as if the name of the company had not been struck off.

Liability of members of company to remain

160. The striking off the register of any company under this Law shall not affect the liability, if any, of any director, manager, officer or member of the company,